Thomas M. Lancia PLLC
By: Thomas M. Lancia, Esq.
22 Cortlandt Street
16th Floor
New York, New York 10007
212.964.3157

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
INSTITUTIONAL INVESTOR, LLC and
EUROMONEY INSTITUTIONAL INVESTOR PLC   :

|  |  |  |
|---|---|---|
| | Plaintiffs, | : | COMPLAINT |

     - v -                        :     Jury Trial Demanded

                                           :     14 CIV.

SUSQUEHANNA INTERNATIONAL GROUP, LLP
and  JOEL GREENBERG                       :

                Defendants.       :
-------------------------------------------------------------X

       Plaintiffs   INSTITUTIONAL   INVESTOR,   LLC   ("II")   and   EUROMONEY

INSTITUTIONAL INVESTOR PLC ("Euromoney") (collectively, "Plaintiffs"), by its attorneys,

Thomas  M.  Lancia  PLLC,  brings  this  civil  action  against  Defendants  SUSQUEHANNA

INTERNATIONAL  GROUP,  LLP  ("SIG")  and  JOEL  GREENBERG  ("Greenberg")

(collectively "Defendants") and complains as follows:

## PARTIES AND JURISDICTION

      1.     By this Complaint, II and Euromoney seek statutory damages, actual damages,

compensatory damages, treble damages, punitive and exemplary damages, injunctive relief, and

their attorneys' fees and costs pursuant to the Copyright Act, 17 U.S.C. § 501 *et seq.*; the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Title II of the Electronic Communications

Privacy Act, 18 U.S.C. § 2701 *et seq.* and for breach of contract, fraud and deceit, and misappropriation of confidential business information and/or trade secrets.

2.     Euromoney is an international publishing company with headquarters in the United Kingdom and an office at 225 Park Avenue South, New York, New York 10003. II, a subsidiary of Euromoney, is a Delaware company with its principal place of business at 225 Park Avenue South, New York, New York 10003. SIG is Delaware partnership with its headquarters at 401 City Avenue, Bala Cynwyd, Pennsylvania 19004 and an office at 140 Broadway 47th Floor, New York, New York 10005. Joel Greenberg was at all pertinent times an employee of SIG.

3.     Pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Court has subject matter jurisdiction over the Plaintiffs' claims for copyright infringement, brought under the Copyright Act, 28 U.S.C. § 501 *et seq.*; and for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Title II of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* The Court has supplemental jurisdiction over the Plaintiffs' remaining claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

4.     In its license agreement with Platiniffs, Defendants consented to the exercise of personal jurisdiction by this Court. Additionally, upon information and belief, this Court has personal jurisdiction over Defendants because it (a) purposefully directs activities towards the state of New York, including financial trading; (b) regularly conducts and solicits business in the state of New York; (c) derives substantial revenues from goods and/or services provided to customers in the state of New York; and/or (d) regularly and purposefully accessed Plaintiffs' servers located in New York.

2

5.      Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1400(a).

## FACTUAL BACKGROUND

6.      Euromoney is one of Europe's largest business and financial magazine publishers, delivering business information to various sectors, including finance, law, and energy, for over 35 years.  Euromoney publishes print and online magazines, journals, and newsletters among other things.  II is the United States subsidiary of Euromoney.  II owns copyrights in both of its print and online editions of publications, journals, ebooks and the like.   Among those online publications is a series of sophisticated, timely, unique and highly coveted niche market e-magazines provided under the rubric "II Intelligence."  Though anyone can purchase them, these e-magazines are not usually marketed to the general public but rather are frequently purchased by fund managers, compliance officers and other business executives.  Within II Intelligence, there are several niche market online publications, such as Money Management Intelligence, Foundations and Endowments, Compliance Intelligence, Real Estate Intelligence, Fund Industry Intelligence and so on.  In each of these areas, II delivers clearly organized and customized content, including news, data and features, quickly but carefully developed at substantial cost to II, addressing the subscribers' need for timely and pertinent information to stay abreast of the market.  Subscribers, including some of the most prominent governmental and financial institutions in the United States, recognize the considerable benefit reaped from these online publications and are generally content to pay a commensurate fee for it.

7.      Within Institutional Investor Intelligence prior to February 27, 2014 Derivatives Intelligence was also offered.   On that date, Derivitaves Intelligence was merged into Euromoney's Global Markets service, providing the same services to subscribers as had been

offered under the II Intelligence rubric.    Derivatives Intelligence is an exclusive daily information service focused on the global derivatives markets, providing details regarding for example primary and secondary issuer and investor activity for derivatives buyers, sellers and structurers.  Derivatives Intelligence is provided through a password-protected internet website available only to subscribers ("Website").  Subscribers pay for single or multiple user licenses for a fee to access the content contained on the Website.

      8.     The first time the Website is accessed by a new subscriber, he or she must indicate agreement with the terms and conditions of the Website before he or she is permitted to view the exclusive and unique content.   Among those terms and conditions are provisions pertaining to use.  Section 3.2 of the Terms and Conditions expressly states that "[y]ou agree to use the Sites and the Content solely for your own personal use and benefit and not for resale or other transfer or disposition to any other person or entity." Further, Section 6.4 of the Terms and Conditions states that:

> "Except to the extent a user name and password is intended for more than one licensed user as agreed by us in writing, the following are not permitted:
>
> > a) any Registered User, Subscriber or licensed user under any subscription sharing their user name and password;
> >
> > (b) access through a single name and password being made available to multiple users on a network . . ."

Finally, Section 3.5 cautions: "If it is brought to our attention that you have sold, published, distributed, retransmitted or otherwise provided access to any article(s) from the Content to anyone without our express prior written permission, we will invoice you for copyright abuse damages of US$1500 per article unless you can show that you have not infringed any copyright, which will be payable immediately on receipt of the invoice."

9.      Despite the terms of this license, the Website was used to support the operations of SIG well in excess of the use authorized by Plaintiffs. Indeed, the Plaintiffs' internet website logs for SIG indicate a frequent, repetitive and nearly simultaneous access far in excess of a typical single user, including numerous occasions when multiple users accessed the exact same Website materials at nearly the same time.

10.     Plaintiffs offer subscriptions to the Website in electronic format, allowing subscribers to browse and search the Website and its content easily and efficiently. The format is updated frequently and new materials are added on a daily basis. Emails are sent daily informing the user of the content and the user can save articles or other data in files maintained and controlled by the Plaintiffs for easy access at a later date. Each week, all of the articles posted to the Website during that week are made available to subscribers in one place, as an electronic newsletter, comprised of up to twenty eight (28) pages of articles. Subscribers are able to email articles to other individuals. Print copies are also sent to all subscribers.

11.     Every subscriber has a confidential password and identification number unique to his or her account. The password must be entered manually into the subscriber's individual computer terminal, laptop, or mobile device, which then triggers a technological process providing access to the Plaintiffs' server by the server accessed by that individual computer terminal, laptop, or mobile device. The servers in turn usually "talk" at least in part via satellite.

12.     The Website constitutes original material authored by II and Euromoney. Plaintiffs have complied with the copyright laws and is the exclusive owner of the copyrights therein, including all rights infringed by Defendants.

13.     The Register of Copyrights has issued Certificates of Registration for the Website and related updates.

14.     II and Euromoney regularly police the Website using Back Office Administration Tool ("BOAT") tracking software.  BOAT tracks every action taken by an individual user's account, including Website logons and article and page views.  This information is contained in an Excel spreadsheet containing confidential business information and as such cannot be attached to this Complaint on the date of filing.  When unauthorized access is suspected, II and Euromoney employees must sift through the information and compile it into a format that is readily and easily understood, taking up employee time at great company expense.

15.     In December of 2012, when beginning his subscription to the Website, Greenberg agreed affirmatively to the Terms and Conditions for accessing the Website by clicking on the button indicating as such.  At all pertinent times, Greenberg was acting within the scope of his employment with SIG.  He paid for a single, two year user license at $5,875.

16.     Despite the agreement by SIG and Greenberg to abide by the Terms and Conditions, Plaintiffs' Website logs confirmed that multiple users accessed the Website and exceeded the number of users permitted for the fee paid.  Additionally, based on emails and other conversations with SIG employees, at least one unauthorized user – Debra Hickmon – was accessing the Website, though Plaintiffs' logs show that many more SIG employees were likely using the Website without authorization.  These unauthorized users accessed the Website by receiving the confidential password from Greenberg without authorization from the Plaintiffs.

17.    A smattering of the numerous abuses of the Website and its invaluable content by SIG tells the tale of numerous unauthorized users.  One example of this infringing conduct includes three downloads of the newsletter for the week of February 4, 2013 – twice on that date at 12:28 and 12:31 and once again on February 5, 2013 at 13:33 (1:33 p.m.).  The newsletter dated May 27, 2013 was downloaded on May 30, 2013 at 14:30 and again at 14:34.  Similarly the newsletter from June 17, 2013 was downloaded on that date at 13:51 and 13:53; the July 8, 2013 newsletter was downloaded at both 14:27 and 14:30 on July 15, 2013.  The January 7, 2013 newsletter was downloaded on January 7, 2013 at 17:50 and again on January 9, 2013 at 15:54. The newsletter dated November 4, 2013 was downloaded on that day at 15:17 and again on November 12, 2013 at 16:39.

18.    Multiple downloads of the same weekly newsletter continued throughout the time that Greenberg had a subscription to the Website.  The Website newsletter dated November 11, 2013 was downloaded six (6) different times: on November 11, 2013 at 20:06, 20:09, 20:11, 20:13 and 20:15 and the following day at 16:37.  The December 24, 2012 newsletter was also downloaded several times – on December 26, 2012 at 15:48, 15:49, and 15:50, on December 31, 2012 at 12:09 and 12:10 and again on January 2, 2013 at 14:43 – for a total of six (6) different times.   The September 30, 2013 newsletter was downloaded five (5) different times on September 30, 2013 – twice at 15:35, at 15:36, 15:37 and 19:39.

19.    Before a newsletter or any other pdf is printed or downloaded from the Website, the following notice appears as a popup on the computer screen:

**"This pdf version of Derivatives Intelligence is available to paid subscribers only.  You User ID and password are personal to you and sharing of personal User ID and password constitutes a violation of the terms of your**

subscription . . . Copying of this publication is in violation of the Federal Copyright law (17 U.S.C. 101 et seq.). Violators shall be subject to criminal penalties as well as liability for substantial money damages, including damages up to $100,000 per infringement, costs and attorneys' fees . . ."

20.     The type of downloading done by SIG employees is indicative of numerous unauthorized users.  It also tends to show that unauthorized reproduction and distribution of the copyrighted materials was rampant and widespread at SIG.

21.     In addition to the multiple downloads, there were occasions where multiple Website logons occurred within minutes or even just seconds of each other.  On December 26, 2012, Greenberg's logon information was used to access the website at 15:23 and 15:48.  The confidential user information was also used to log on to the Website on January 14, 2013 at 15:55 and 16:01; February 19, 2013 at 19:17 and 19:49; and November 4, 2013 at 15:10 and 15:16.  There were also multiple Website channel views in a very short span of time.  For example, on December 26, 2012, the Home channel was visited at 15:23, 15:48, and 15:49 while the Archive channel was visited two distinct times at 15:49.  On February 19, 2013, the Home channel was visited at 19:17, 19:18, 19:21 and 19:49 and the Archive channel was visited at 19:19.  The Login New channel was accessed on November 4, 2013 at 15:10, 15:16 and 15:27. Access as described above can only be attributed to multiple SIG employees using Greenberg's confidential password to access the Website without authority.  It is undisputed that only Greenberg was authorized to access the Website.

## AS AND FOR A FIRST CAUSE OF ACTION FOR DIRECT COPYRIGHT INFRINGEMENT

22.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 21 of this Complaint with the same force and effect as if set forth fully herein.

23.     Notwithstanding the provision of the Copyright Act that the display, distribution and reproduction of copyrighted works may lawfully be made only by the copyright owner or with its authorization, Defendants have willfully and without Plaintiffs' permission infringed Plaintiffs' copyrights by engaging in the systematic, regular and repeated unauthorized access to the Website's various pages and the copyrighted articles contained therein.

24.     Plaintiffs have been irreparably harmed by Defendants' unauthorized reproduction of their copyrighted works.

25.     In light of the foregoing, Plaintiffs are entitled to the remedies provided for in 17 U.S.C. §§ 502 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT

26.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 25 or this Complaint with the same force and effect as if set forth fully herein.

27.     Individuals using Greenberg's personal user identification and password have directly infringed the Plaintiffs' copyrights on a daily basis by, for example, accessing the copyrighted Website material without authorization and creating unauthorized reproductions by printing copyrighted articles in violation of Plaintiffs' exclusive rights under 17 U.S.C. §§ 106, 501.

28.     Defendants are liable as contributory infringers for the copyright infringement committed via the use of Greenberg's subscription information.  By sharing this confidential

9

information, Defendants have caused, enabled, facilitated, and materially contributed to that infringement.

29.     Defendants have actual knowledge of infringement.  Greenberg, after purchasing a single subscription to the Website in his capacity as SIG employee, shared his confidential information with other SIG employees unauthorized to receive this information.

30.     Through the conduct described above, Defendants are contributorily liable for the infringement described herein.

31.     Defendants' infringement was willful, intentional, purposeful, and in disregard of the rights of the Plaintiffs, and has caused substantial damages to Plaintiffs.

32.     Plaintiffs are therefore entitled to statutory damages and other remedies provided for in 17 U.S.C. §§ 502 *et seq.*

## AS AND FOR A THIRD CAUSE OF ACTION FOR VICARIOUS COPYRIGHT INFRINGEMENT

33.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 32 of this Complaint with the same force and effect as if set forth fully herein.

34.     Unauthorized SIG employees using the Website have directly infringed on Plaintiff's copyright on a regular basis by the above-described conduct in violation of Plaintiff's exclusive rights under the Copyright Act.

35.     Defendants are liable as vicarious infringers for the copyright infringement committed by the unauthorized use of Greenberg's confidential subscription information.  At all

times relevant to his action, Defendants (i) have had the right and ability to control and/or supervise the infringing conduct in sharing the Website logon information, and (ii) have had a direct financial interest in, and derived substantial financial benefit from, the infringement of Plaintiff's copyrighted articles and other Website materials.

36.      Defendants derived direct benefit from the infringement by gaining access to information and data that they would otherwise not have had access to. Defendants also avoided the business costs associated with purchasing the correct number of subscriptions for employees needing access to the Website and its content.

37.      Through the conduct described above, Defendants are vicariously liable for the infringement of Plaintiffs' rights.

38.      Plaintiffs are therefore entitled to statutory damages and other remedies provided for in 17 U.S.C. §§ 502 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

39.      Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if set forth fully herein.

40.      Defendants have violated 18 U.S.C. § 1030(a)(2) by intentionally accessing, without authorization, a computer involved in interstate commerce or communication, thereby obtaining information contained on that computer.

41.      Defendants have violated 18 U.S.C. § 1030(a)(5) by knowingly causing the

transmission of a code, specifically defendants' confidential username and password and by intentionally accessing a protected computer without authorization.

42.     Defendants have violated 18 U.S.C. § 1030(a)(6) by knowingly and with an intent to defraud, trafficking, in a manner that affects interstate commerce, in passwords and access codes through which Plaintiffs' respective websites may be accessed without authorization.

43.     Plaintiffs have suffered damage and loss in excess of $5,000 by reason of these violations and are entitled to damages, injunctive relief and other equitable relief as provided by 18 U.S.C. § 1030(g).

## AS AND FOR A FIFTH CAUSE OF ACTION FOR VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

44.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth fully herein.

45.     Defendants have violated Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*, by (a) intentionally accessing without authorization, or by intentionally exceeding an authorization to access, the password-protected areas of Plaintiffs' Websites; (b) obtaining access to electronic communications while such communications were in electronic transmission by that web site; (c) disclosing such communications to third parties not authorized to receive them; and (d) conspiring, encouraging, aiding, abetting, and participating in efforts to do so.

46.     Plaintiffs have been irreparably damaged by defendants' violations of Title II of the Electronic Communications Privacy Act, and are entitled to damages, injunctive relief, and

attorneys' fees and costs pursuant to 18 U.S.C. § 2707.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR VIOLATION OF SECTION 1201 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

47.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 46 of this Complaint with the same force and effect as if set forth fully herein.

48.     SIG employees have distributed, received and used the password provided by Plaintiffs exclusively to Greenberg to access the Website without authorization.

49.     The password was a technological measure used to control access to a copyrighted work.

50.     The password was used to circumvent the technological protection preventing unauthorized access to a copyrighted work, the Website.

51.     Plaintiffs have been irreparably damaged and are entitled to injunctive relief, damages and attorneys' fees under Section 1203 of the Digital Millennium Copyright Act.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT

52.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 of this Complaint with the same force and effect as if set forth fully herein.

53.     Plaintiffs and Defendants entered into a valid and enforceable agreement, under which Plaintiffs provided single-user Internet access to the Website and a limited license for access by a single SIG user. Plaintiffs further provided a confidential password to Defendants and Defendants agreed that access would be limited to one user and not to permit any other

13

person or entity to use the password to access the site or to use the password to access the site for anyone else.

54.     Defendants breached its agreement with Plaintiffs by providing the password to multiple persons and permitting those persons to use the password to access the Website for purposes substantially in excess of its license.

55.     Section 3.5 of the Terms and Conditions for accessing the Website clearly states that unauthorized distribution, display, reproduction or other access results in damages of $1,500 for each infringing article.  Defendants may have infringed scores of newsletters resulting in damages in excess of $100,000.

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR MISAPPROPRIATION OF TRADE SECRETS

56.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 55 of this Complaint with the same force and effect as if set forth fully herein.

57.     Plaintiffs licensed a confidential password to Defendants for use only by a single user, and that password was an item of independent economic value used in Plaintiffs' businesses to obtain an advantage over those who did know or use it.

58.     The confidential password's value is derived from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from disclosure or use of the password.

59.     Without authorization from Plaintiffs, Defendants misappropriated the password

and used the password for the benefit of others not permitted to use the password.

60.      Defendants' misappropriation of Plaintiffs' confidential password was willful and malicious and caused irreparable damage to Plaintiff.

## AS AND FOR A NINTH CAUSE OF ACTION FOR FRAUD AND DECEIT

61.      Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.      To access the Website, Defendants misrepresented from at least December 2012 through November 12, 2013 that they were subscribers to the Website, when in fact only one subscription to the Website was ever purchased by Defendants.

63.      Defendants knew at all pertinent times that they were only permitted to have one user accessing the Website and still knowingly and intentionally allowed multiple employees to access the Website.

64.      Plaintiffs reasonably relied on the representation that Defendants were Website subscribers, as the confidential password issued to Defendants was used to gain such access.

65.      Defendants' misrepresentation caused Plaintiffs to permit Defendants to have access to the Website to its detriment.

WHEREFORE, II demands judgment in its favor and against Defendants, as follows:

(1) that Defendants and its employees and agents be permanently enjoined from, directly or indirectly, infringing in any manner any of Plaintiffs' copyrighted material and from disclosing confidential passwords to unauthorized persons and entities, and from inducing, aiding, causing or materially contributing to such infringement, including the provision of

confidential passwords to unauthorized users, and from violating the Copyright Act, 17 U.S.C. § 501 *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030; Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq*;

(2) that Defendants be required to pay Plaintiffs statutory damages for every instance in which Plaintiffs' copyright was infringed;

(3) that Defendants be required to pay Plaintiffs their actual damages incurred as the result of Defendants' infringement of Plaintiffs' copyrights;

(4) that Defendants be required to pay damages (such damages to include lost profits or Defendants' profits where appropriate), including without limitation treble damages, punitive damages, and exemplary damages, for (a) violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030; violations of Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*; and (e) misappropriation of trade secrets;

(5) that Defendants be required to pay Plaintiffs their direct and consequential damages incurred as the result of Defendants' breach of its agreement with Plaintiffs;

(6) that Defendants be required to pay liquidated damages in the amount of $1,500 per infringement under the license agreement, in an amount to be determined at trial but believed to be in excess of $100,000;

(7) that Defendants be required to pay Plaintiffs their attorneys' fees and other costs of this action; and

(8) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        March 27, 2014

THOMAS M. LANCIA PLLC
Attorney for Plaintiffs **INSTITUTIONAL INVESTOR, LLC and EUROMONEY INSTITUTIONAL INVESTOR PLC**

Thomas M. Lancia, Esq.
22 Cortlandt Street
16th Floor
New York, New York 10007
212.964.3157
tlancia@lancialaw.com

16